UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:21-cv-81223-RS  -  SMITH/Matthewman

LANCE SPIKES, MARJORIE T. HOLLMAN, MICHAEL
CORTES, BRIAN HOROWITZ AND CAMERON N. MAY,
individually,

    Plaintiffs,
v.

SCHUMACHER AUTO GROUP, INC., a Florida Corporation,
CHARLES A. SCHUMACHER, individually, and
AMANDA SCHUMACHER, individually,

    Defendants.
_____/

**MOTION FOR DEFAULT OF ARBITRATION, MOTION FOR BREACH OF THE ARBITRATION AGREEMENT AND ENTRY OF DEFAULT JUDGMENT, AND ALTERNATIVELY MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT ENTER A DEFAULT JUDGMENT BASED ON ITS INHERENT POWERS**

    Plaintiffs Lance Spikes, Marjorie T. Hollman, Michael Cortes, Brian Horowitz, and Cameron May ("collectively Plaintiffs") move this Court for entry of arbitration default against the Defendants for failure to pay the required costs associated with the arbitration. Plaintiff's also seek a ruling that Defendants have materially breached the arbitration contracts, thus allowing for entry of default judgment on liability and alternatively, under the Court's inherent powers, move for entry of an order to show cause as to why a default judgment on liability against the Defendants should not be entered due to Defendants' bad faith evidenced by their (1) intentional non-payment of arbitration fees, (2) intentional refusal to continue to arbitrate after the Panel issued negative rulings, and (3) intentional failure to follow the prescribed Arbitration Agreement Rule 7(D) for disqualification of an arbitrator after Defendants raised an unsupported allegation of Panel

impartiality after Defendants' refused to pay the required arbitration fees. In support of this Motion, Plaintiffs state:

## INTRODUCTION

1.  The Plaintiffs are former non-exempt employees of the Defendants Schumacher Auto Group, Inc. ("Schumacher Auto"), Charles A. Schumacher ("Charles"), and Amanda Schumacher ("Amanda"). Defendants intentionally failed to pay Plaintiffs one and one-half times their regular rate of pay for all hours worked over forty (40) hours per week. The Plaintiffs, who were subject to Arbitration Agreements imposed by the employer, served Requests for Arbitration ("RFA") on the Defendants. The parties arbitrated these matters on an agreed consolidated basis until Defendants, after receiving negative rulings on discovery matters, failed to pay the required arbitration costs and abandoned the arbitration.

2.  This is not a situation where the Plaintiffs initially filed a complaint in Federal Court and requested a stay pending arbitration. Here, the Plaintiffs did the right thing. They honored their Arbitration Agreements and served RFA's invoking arbitration under the Agreements terms.

3.  The Plaintiffs come to this Court now by filing a complaint for relief under the Fair Labor Standards Act ("FLSA") and asking the Court to forego issuing a stay under § 3 of the Federal Arbitration Act ("FAA") because the arbitration "has been had in accordance of its terms" and Defendants are in default of the arbitration and in material breach of the arbitration contracts because they failed to pay the required arbitration fees.

4.  Plaintiffs and Defendants were subject to Arbitration Agreements ("Agreement" or "Agreements") and Arbitration Rules ("Rules"). (**See Exhibit A – Spikes –Agreement and Rules.**) The Hollman, Cortes, Horowitz, and May Arbitration Agreement & Rules are attached as **Composite Exhibit B**.

5. Under the Agreements, Plaintiffs Spikes, Hollman, and Cortes served their Requests for Arbitration ("RFA") along with the required fees in September and December 2019 and filed Amended Requests for Arbitration on August 7, 2020.

6. Defendants agreed to toll the statute of limitations for Plaintiffs Horowitz and May as of March 1, 2020, while the parties discussed settlement. Horowitz and May filed their Requests for Arbitration on August 7, 2020.   (**Exhibit C – Attorney Lemoine email confirming tolling of SOL**).

7. The five Amended RFA's are attached as **Composite Exhibit D**.

8. The Agreements prohibited consolidation of the claims unless the parties agreed otherwise. (**Exhibit A, Arb. Agmt, pg.1, ¶ 2D**).   Plaintiffs served their Requests for Arbitration individually as required and were prepared to arbitrate the claims individually.  Defendants' then counsel, Kenneth Lemoine, requested consolidation of the claims, and the Parties agreed to consolidate the five individual claims and to strike a tripartite panel.

9. Defendants requested consolidation of the claims so they would not have to pay for five separate arbitrations.

10. Ken Lemoine indicated he contacted the American Arbitration Association ("AAA") to administer the arbitration, but AAA refused to administer the arbitration because Schumacher Auto Group had an outstanding debt to AAA for a past arbitration.

11. In October 2020, Mr. Lemoine arranged with the independent dispute resolution organization Judicial Arbitration and Mediation Service ("JAMS") to administer the consolidated arbitration and to provide the names of former judges from which the tripartite Panel would be struck.

12. The Panel included Hon. Joseph Farina (Ret.), Hon. Lucy Brown (Ret.) and Hon. David Crow (Ret.).

13. Both parties signed the JAMS Stipulation for Arbitration stipulating:

It is stipulated and agreed by the Parties to submit all disputes, claims, or controversies to neutral binding arbitration at JAMS, pursuant to the JAMS Arbitration Administrative Policies and the Parties' Agreements. The Parties hereby agree to give up any rights they might possess to have this matter litigated in a court or jury trial."

However, Plaintiffs specifically withheld the right to seek relief in a court of law to "enforce, compel, or seek waiver of arbitration if the Respondents fail to arbitrate or fail to abide by the parties' agreements." **(Exhibit E – Stipulations for Arbitration).**

14. JAMS issued the Commencement Package on December 1, 2020 which outlined the Arbitration Fee Schedule, including the hourly rate of the potential arbitrators, and set forth conclusively, as did the Agreements, that Defendants were responsible for payment of all costs and fees of the arbitration except for the $400.00 filing fee due from the Plaintiffs. **(Exhibit F – Commencement Package**.)

15. The first scheduling hearing was held on February 2, 2021 and the Parties agreed to final hearing dates of June 14, 15, 16, and 17, with June 18 reserved if an additional day was needed. Scheduling Order #1, dated February 10, 2021, states, "The parties will be requested to deposit fees sufficient to compensate the arbitrators for the scheduled hearing 60 days in advance of the commencement of the hearing." **(Exhibit G – Scheduling Order #1)**.

16. During the period February 2, 2021 and April 15, 2021 the parties vigorously commenced with discovery which resulted in several motions to compel filed by the Claimants, motions for protective orders by both parties, and six status conferences/hearings with the Panel (February 2, March 1, March 5, March 19, April 9, April 13). The status conference/hearings resulted in four Scheduling Orders/Rulings by the Panel.

17. On February 8, Plaintiffs filed a Notice of Deposition, setting the Depositions of Defendants for March 9 and 10. Plaintiffs also served requests for production and interrogatories.

Defendants failed to timely respond to discovery, causing Plaintiffs to file a Motion to Compel Responses to First Request for Production and Hollman's First Set of Interrogatories.

18. The Defendants changed counsel on March 1, 2021, to Mr. Bruce Loren, and the Parties continued to arbitrate their dispute.

19. Mr. Loren moved for a protective order seeking protection from the March 9 and 10 depositions and a ruling that the Defendants' depositions not be had as scheduled. A hearing was held on March 5, 2021 and the arbitrators granted the motion in part, ruling that Defendants had to provide Plaintiffs with two or three new depositions dates during the period March 17 through March 26 period. **(Exhibit H – Scheduling Order #2).**

20. Defendants failed to abide by the panels Scheduling Order #2, and on March 23, 2021, Mr. Loren indicated he could not provide deposition dates as ordered by the arbitrators but would provide alternate dates.

21. On or about April 6, the Defendants changed counsel (for the 4th time)[1] to Mr. Dan Levine. Mr. Levine advised the undersigned the deposition dates confirmed by Mr. Loren would not be honored. In an April 8th email, Mr. Levine specifically stated, "First off, unless there are binding stipulations, I'm not all that interested in anything our predecessors may have indicated to you." **(Exhibit I – 4/8/21 email from Dan Levine).**

22. Plaintiffs filed their second motion to compel deposition dates outlining the extensive attempts to secure deposition dates since the inception of the arbitration and the constant and continuing effort by Defendants to thwart the depositions. Plaintiffs' also renewed their motion to compel better answers to interrogatories and requests for production.

---

[1] The Defendants have employed five different counsel since the RFA's were served. Marc E. Brandes, Esq. (September 2019 – December 2019); Christopher DeLorenzo, Esq., (December 2019 – March 2020); Ken Lemoine, Esq. (March 2020 – March 2021); Bruce Loren, Esq. (March 2021 – April 2021); Dan Levine, Esq. (April 2021 – present).

23. A hearing was held April 13, 2021 and the Panel issued Scheduling Order #4 granting both of Plaintiffs' motions to compel, setting specific dates for depositions that Defendants had continually thwarted and granting attorney's fees as a sanction against the Defendants

> <u>Claimants' Requests for Attorneys' Fees and Costs as to both Motions to Compel</u>: Pursuant to the applicable Schumacher Automotive Group Rules as modified by agreement of counsel, and applicable Federal Rules of Civil Procedure, the Panel finds and holds that Claimants are entitled (sic) be awarded their fees and costs with respect to their Motions to Compel, to be paid by Respondents in an amount to be determined. The amount of such fees and costs shall be determined at an evidentiary hearing, if necessary, in the event the parties are unable to agree on the amount.

(**See Exhibit J – Scheduling Order #4**).

24. After those negative rulings, the Defendants refused to pay any further arbitration deposits and costs. They refused to further participate in the arbitration and alleged the current Panel was no longer partial due to the Defendants' self-created financial dispute.

## DEFENDANTS' FAILURE TO PAY THE REQUIRED ARBITRATION FEES RESULTED IN TERMINATION OF THE ARBITRATION BY JAMS

25. Per the Agreements, Defendants were responsible for payment of the arbitration costs and fees. On February 22, 2021, JAMS issued a $77,000.00 arbitration deposit invoice for anticipated costs related to the arbitration, including the costs of the four-day final hearing. The payment was due by April 15, 2021. When Mr. Lemoine was replaced by Bruce Loren, JAMS re-issued the deposit invoice to Mr. Loren with the same due date of April 15, 2021. When Mr. Loren was replaced by Mr. Levine, JAMS re-issued the invoice to Mr. Levine with the same due date of April 15, 2021. (**Composite Exhibit K  - Invoices from JAMS**).

26. Defendants failed to pay the required fee by the deadline.

27. In an attempt to salvage the arbitration and keep the final hearing dates on the calendar, JAMS extended the deposit deadline to April 16, 2021. Defendants failed to pay the amounts owed.

28. Defendants instead filed an *Emergency* Motion to Reduce the Number of Dates Set for Final Hearing seeking to reduce the arbitration to two days from the agreed-upon four days and seeking to bifurcate the case into two phases. Despite this "Emergency" filing, Defendants never paid the required fee to have the Motion heard by the Panel. (**Exhibit L**).

29. JAMS again tried to accommodate the Defendants and advised Defendants they could pay a partial fee to have the outstanding motions heard. (**Exhibit M**).

30. On April 16, 2021 JAMS cancelled the final hearing because the Defendants failed to pay the required deposit. (**Exhibit N**).

31. JAMS made repeated demands on Defendants for payment of the final hearing deposit and continued to advise the Defendants they could pay a partial retainer to have the outstanding motions, including the Emergency Motion, heard.

32. On April 19, 2021, Dan Levine sent an email to the undersigned stating, "I think we should confer as to how to proceed. Frankly, the requested fee deposit from JAMS is excessive, in general, but certainly for this case." "With regard to any new/future arbitration demands, please note we do not agree to the use of JAMS." "To be clear, we are not refusing to arbitrate this matter. We simply are objecting to what we believe is an excessive fee being charged by JAMS." **(Exhibit O – Email from Levine 4/19/21)**.

33. On or about May 24, 2021, JAMS issued a Notice to All Parties that the arbitration was on administrative stay, and if payment was not received by June 23, 2021, JAMS would close the file. (**Exhibit P**).

34. Defendants failed to make the required final hearing deposit payment, and JAMS closed the file and ended the arbitration on June 28, 2021. (**Exhibit Q**).

## DEFENDANTS' BREACH OF CONTRACT AND BAD FAITH REFUSAL TO ARBITRATE AS AGREED

35. As early as December 1, 2020, when the Commencement Package was issued, Defendants knew the hourly rate of the arbitrators.

36. It was not until after the Panel issued its April 13th Scheduling Order #4, sanctioning the Defendants for discovery violations and awarding fees and costs to the Plaintiffs did the Defendants object to what they now deemed excessive fees.

37. On April 21, 2021, Dan Levine emailed Olga Montealegre, the JAMS contact for this matter, and stated:

> *Mr. Montealegre –*
>
> *Respondents in no way are refusing to arbitrate.*
>
> *However, Respondents will not agree to pay what they believe is an excessive deposit amount for this matter.*
>
> *Additionally, Respondents believe the Panel's impartiality has been compromised as a result of the financial dispute.*
>
> *Please advise as to the status of this arbitration.*

38. Ms. Montealegre responded on the same day:

> *Good afternoon, Mr. Levine –*
>
> *I am in receipt of your email below. The arbitration is open. Per our conversation last week, JAMS cannot proceed with scheduling any motion for hearing unless payment has been received. I also informed you that Respondent may make a partial payment so that pending matters could be heard. Furthermore, I confirmed that the Final Hearing dates would be removed from calendar if payment was not received in full by end of day, April 16, 2021.*
>
> *At this time Respondent's account is negative and JAMS asks that a payment be made to prevent any further delays. Respondent may make a partial payment to have the pending motions heard.*
>
> *I kindly request that Claimant provide a response to Respondent's email.*

39. Claimants responded as follows:

*"Dear Olga:*

*Per your request below, the Claimants respond to the Respondents Wednesday, April 21, 2021 1:55 PM email as follows:*

**"Respondents in no way are refusing to arbitrate."**
- **Response:** *Yes, they are. They are refusing to even pay the standard deposits so that hearings on motions, including their own motions can be heard.*

**"However, Respondents will not agree to pay what they believe is an excessive deposit amount for this matter."**
- **Response:** *Respondents through their corporate, in house counsel Ken Lemoine, requested consolidation of five separate arbitrations and agreed to a tripartite panel in October 2019 [sic correct date is September 2020]. Respondents agreed to a 4 day hearing and were fully aware of the costs associated with that hearing and the dispositive motions that would precede the hearing.*
    - *2/2/21 - Parties attend first scheduling conference with Panel and agree to a four day Final Hearing June 14, 15, 16, and 17 and reserving June 18.*

**"Additionally, Respondents believe the panel's impartiality has been compromised as a result of the financial dispute."**
- **Response:** *All arbitrators work for a fee. If the fee is not paid, they do not work until it is paid. The failure to pay the fee does not lead to partiality\*. Respondents refused to pay the final hearing deposit only after the Panel ruled against the Respondents on two discovery motions and granted Claimants' request for sanctions and attorney's fees.*

    - *The first invoice 5585946 for $77k was issued on February 22, 2021 to Respondents and Mr. Lemoine (both jointly responsible) with a due date of April 14. There was no objection to this invoice and no issue raised as to impartiality.*

    - *The second invoice 5602798 for $77k was issued (to new counsel Bruce Loren) on March 3, 2021 to Respondents and Mr. Loren (both jointly responsible) with the same due date of April 14. There was no objection to this invoice and no issue raised of impartiality.*
        - *3/5/21 - Status conference was held with Panel. No issue of impartiality raised by Respondents.*
        - *3/19/21 – Status conference was held with Panel. No issue of impartiality raised by Respondents.*
        - *4/9/21 – Status conference was held with panel and Respondents new counsel Dan Levine. No issue of impartiality raised by Respondents.*
        - *4/13/21 – Status conference and hearing on motions to compel was held with Panel and Respondent's new counsel Dan Levine. No issue of impartiality raised by Respondents.*

    - *4/14/21 – Deadline to pay hearing Deposit of $77k*

- *4/15/21 – Scheduling Order #4 (dated April 13, uploaded to JAMS 4/15/21)– Panel grants Claimants' motions to compel and grants Claimants' motion for sanctions/attorney's fees.*
- *4/16/21 – Extension of deadline to pay hearing Deposit of $77k*
- *4/16/21 – Respondents file an Emergency Motion to Reduce the Number of Dates for Final Hearing from Four to Two and do not raise any issue of impartiality. But fail to set the matter for hearing or pay the necessary fees to set the matter for hearing.*
- *4/21/21 – Respondents (5th set of attorneys Mr. Levine) <u>raises the issue of impartiality for the first time.</u>"*

(*Note: Plaintiff's counsel used the word "impartiality," when she meant "partiality."*)

40. Ms. Montealegre requested a rebuttal to Claimants' response and Mr. Levine responded:

> *We have made our position quite clear in all previous communications to JAMS and Ms. Cullen.*
>
> *Thank you.*

41. Defendants have made only conclusory allegations of partiality and cited no support for the allegations, nor have they followed the requirements of the Agreement (**Exhibit A, Rule 7(D)**) for disqualification of an arbitrator if the issue of partiality arises.

42. Lastly, not only did Defendants refuse to pay the final hearing deposit, they did not pay the arbitrators $2033.16 for work completed. (**Exhibit R**).

## MEMORANDUM OF LAW

**I.   The Defendants Defaulted in the Arbitration and Waived Their Right to Enforce Arbitration by Failing to Pay the Arbitration Fees.**

"Failure to pay arbitration fees constitutes a "default" under § 3" of the Federal Arbitration Act. <u>Freeman v. SmartPay Leasing, LLC</u>, 771 Fed. Appx. 926, 935 (11th Cir. 2019); See also <u>Id.</u> citing <u>Hernandez v. Acosta Tractors Inc</u>., 898 F.3d 1301, 1303, 1305 (11th Cir. 2018) ("Once [the employer] defaulted in the arbitration [by failing to pay the required arbitration fees], the [d]istrict [c]ourt would have been within its power to find that [the employer] could no longer require [the

employee] to proceed in arbitration."); In Pre-Paid Legal Services, Inc. v. Cahill, 786 F.3d 1287 (10th Cir. 2015) (holding that failure to pay arbitration fees qualified as a default and case could proceed in federal court); Sink v. Aden Enters., 352 F.3d 1197 (9th Cir. 2003) (holding failure to pay arbitration fees qualified as default and the federal court was no longer required to compel arbitration under Section 3 of the FAA).

A default under § 3 of the FAA results in a waiver of the defaulting party's right to enforce arbitration, including the right to request a stay of the proceedings.  Under 9 U.S.C. § 3, a court is only required to grant a motion for a stay so long as "the applicant for the stay is not in default in proceeding with such arbitration."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011).

The Eleventh Circuit applies a two-part test to determine whether a party has waived or defaulted its contractual right to arbitrate:  First, the court decides if, "under the totality of the circumstances," the party "has acted inconsistently with the arbitration right," and, second, the court looks to see whether, by doing so, that party "has in some way prejudiced the other party." Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315-1316 (11th Cir. 2002) (internal citations omitted).  Although the moving party has the burden to prove default and waiver, "the doctrine of waiver is not an empty shell."  In re Checking Account Overdraft Litig., 754 F.3d 1290, 1294 (11th Cir. 2014).  Once a party defaults under an arbitration agreement, the district court need not stay a federal action or compel further arbitration.

    **A.**    **Defendants acted inconsistently with the arbitration right.**

The Agreement requires the Defendants to pay the arbitration fees.  For that, there is no dispute.  Rule 15(B) indicates, "The Company will pay the filing or administrative fees, the fees charge[d] by the Arbitrator and meeting room charges incurred in the conduct of the arbitration." (**Exhibit A**). The JAMS rules also required the Defendants to pay the arbitration fees in this

employment action.

The Defendants, for their own financial benefit, sought to consolidate five arbitrations into a single proceeding with a tripartite panel.  By doing so, the Defendants would not have to pay for five separate arbitrations.  Defendants chose JAMS to administer the arbitration, agreed to JAMS' terms regarding payment, stipulated to only the use of JAMS for this arbitration,  agreed to reserve five days for a final hearing (four days and one alternate date), and knew JAMS' required hearing deposit of $77,000.00 as of February 22, 2021.  Defendants did not complain of this amount until April 21, 2021 when the Panel entered two negative discovery rulings against the Defendants and entered sanctions in the form of attorneys' fees and costs for the Plaintiffs.   Under Freeman Smartpay and Hernandez, non-payment of arbitration fees constitutes default, and default under the arbitration equals waiver of the arbitration right. Non-payment of fees is an act inconsistent with the right to arbitrate.   See Steffanie A. V. Gold Tampa, Inc., 2020 US Dist. LEXIS 129334, 2020 WL 4201948 (M.D. Fla. 2020) relying on Freeman v. Smartpay Leasing, LLC, 771 F. App'x 926, 933 (11th Cir. 2019).

**B.        Plaintiffs have been prejudiced by the Defendants' refusal to pay the fees.**

The Plaintiffs have been deprived of their benefit of the bargain to arbitrate.    In Freeman, the Eleventh Circuit found the Plaintiff was prejudiced by failing to pay the JAMS fee because the failure "prematurely terminated the arbitration and effectively precluded [the plaintiff] from seeking relief through the arbitration proceeding," and the plaintiff was further prejudiced due to the delay and "being forced to proceed in litigation in the district court." Freeman, 771 F. App'x at 933.

Here, JAMS repeatedly requested payment of the fee, offered payment options to the Defendants, advised the Defendants they could make partial payments so the pending motions could be heard, but Defendants failed to avail themselves of the options.   Instead, Defendants

flatly refused to arbitrate in the JAMS forum because they *"will not agree to pay what they believe is an excessive deposit amount for this matter."* (quotation from ¶ 37 above).

Defendants' failure to pay the fee "raises basic questions of fairness because, if unchecked, a party's failure to pay may create a situation where it actually benefits from non-payment." Stiffing the Arbitrators:  The Problem of Nonpayment in Commercial     Arbitration; Eiseman, Neal M. & Farkas, Brian, HARVARD NEGOTIATION LAW REVIEW, April 2015. (**Exhibit S).**

Here, the Defendants have benefitted by stopping the arbitration in its tracks, saving themselves thousands of dollars,  forcing the Plaintiffs into federal court where the Defendants can litigate without having to pay arbitrators, and suffering no penalty for breaching the arbitration Agreements.  By simply not paying, the Defendants upend the entire point of the FAA. The Supreme Court has "stressed that enforcing arbitration agreements according to their terms, and not simple expeditiousness, is the 'basic objective' of the FAA." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCullen, NO. 95-14329-CIV-PAINE, 1995 U.S. Dist. LEXIS 22177, at *5 (S.D. Fla. Dec. 13, 1995)  citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985, 1995 WL 306184 at *6 (1995).  "The basic objective [of the FAA] is not to resolve disputes in the quickest manner possible . . . but to ensure that commercial arbitration agreements, like other contracts, 'are enforced according to their terms.'" Id. (internal citations omitted.)

By not paying, the Defendants have sabotaged the arbitration and unfairly caused the Plaintiffs to come to federal court for redress, which is exactly what Plaintiffs agreed not to do, and is exactly what both Parties agreed not to do when signing the required JAMS Stipulation. However, by stiffing the arbitrators, the Defendants have concocted a viable strategy to destroy the Parties' Agreement and have created significant delays (the arbitration would have been had on June 14-17) and additional costs (filing fees) and attorneys fees that the Plaintiffs now have to

bear all of which has severely prejudiced the Plaintiffs.

**II.     This Court has the Authority to Find a Material Breach of the Arbitration Agreement and Enter a Default Judgment and the Inherent Power to Enter a Default Judgment as a Sanction for Bad Faith.**

**A.  Material breach of the Agreement for non-payment.**

As to breach, the Eleventh, Tenth, and Ninth Circuits have all held that non-payment of fees is a material breach of the arbitration agreement. Freeman v. SmartPay, 2018 U.S. Dist. LEXIS 7763, 2018 WL 467390 at *2 n.2 aff'd Freeman v.SmartPay, 771 F. App'x 926 (11th Cir. 2019) (holding Defendant's refusal to pay the filing fee was an action inconsistent with its arbitration right, and failure to pay the fees also breached the arbitration provision); Pre-Paid Legal Services v. Cahill, 786 F.3d 1287, 1294 (10th Cir. 2015) (non-paying party "breached the arbitration agreement by failing to pay his fees in accordance with the AAA rules"); Sink v. Aden Enters., Inc., 352 F.3d 1197, 1201 (9th Cir. 2003) (non-paying party's "failure to pay the required costs of arbitration was a material breach of its obligations in connection with the arbitration" and "in these circumstances, we hold … the FAA does not compel a district court to return the parties once more to arbitration.") See also Steffanie A. v. Gold Club Tampa, Inc., 2020 U.S. Dist. LEXIS 129334 *10, 2020 WL 4201948 (M.D. Fla. 2020) (finding the Defendant in breach of the arbitration agreement for failure to pay the AAA filing fees.).

The Plaintiffs are entitled to the benefit of their bargain. That bargain was arbitration of their wage claims in a manner set forth in the parties' Agreements. Defendants have unilaterally decided they no longer want to be bound by the Agreements. Defendants are gaming the system and forum shopping by refusing to pay JAMS after the negative rulings. Non-payment of fees cannot become the new normal and chosen method for respondents to circumvent over one hundred years of jurisprudence which zealously enforces arbitration agreements in accordance with their written terms.

> There is a hole in our arbitral system. Despite being among the most efficient and prevalent means of resolving commercial disputes, and one generally favored by courts, arbitration is dangerously susceptible to the problem of nonpayment. Simply put, a respondent seeking to avoid liability may be able to "game" the system by refusing to pay its share of arbitration fees. All too frequently, this leaves the claimant without an effective remedy to hold the nonpaying respondent accountable.
>
> ****
>
> Where the arbitration proceeding indisputably has been terminated due to non-payment, there is nothing offensive or improper about a court simply applying common law breach of contract principles to allow the party who played by the rules to proceed to an inquest on damages. In a commercial dispute, where the parties voluntarily agree to arbitrate and one party's failure to pay compromises the arbitration, liability is the appropriate remedy because it holds the non-paying party fully accountable. ADR providers and courts should work together to ensure that, as a cultural and legal norm, non-payment will not be a successful strategy for a party to sabotage an arbitration.

Stiffing the Arbitrators, pgs. 1, 20.

If the only penalty suffered by the Defendants is a default of the arbitration, then the Defendants win and obtain what they intended by not paying the arbitration fee – a free ride into the federal court. This Court should close the non-payment loophole and exact a penalty that will deter this fast-growing and calculated conduct. That deterrent is default judgment on liability.

### 1. Further breach by failing to follow arbitrator disqualification procedures.

The alleged compromised impartiality of the arbitrators is a ruse. If partiality was really an issue, why did the Defendants file an Emergency Motion to Shorten the Final Hearing to Two Days from Four Days? Would the arbitrators be less partial in a two-day hearing? In his April 19, 2021 email, Mr. Levine tries to leverage the Defendants' power as the purse-holder by suggesting two days is more than enough for the final hearing and if Plaintiffs would agree to two days (not the four days agreed to on February 2) and allow the arbitrators to decide only liability and not damages he (Mr. Levine) "believes JAMS would send a revised invoice, and he (Mr. Levine) would recommend his client pay same so that we can get back on track." (**Exhibit O**). However,

two days later, on April 21, 2021, Mr. Levine wrote to JAMS affirming the Defendants' refusal to pay and alleging for the first time the Panel's impartiality has been compromised because of the financial dispute—a dispute the Defendants created.

Rule 7(D) of the Agreement mandates what must take place to disqualify an arbitrator. "Disqualification or Other Disability - (1) Challenge to Qualifications. Any party, upon learning of a reason that would disqualify the Arbitrator from deciding the Dispute, may request that the Arbitrator recuse herself or himself. The Arbitrator shall rule upon the request applying the standards a judge would use in deciding a motion to recuse." **(Exhibit A, Rule 7(D)).**

Defendants never moved for recusal as required by Rule 7(D). Failing to do so speaks volumes and is proof the Defendants had no intention of further arbitrating this matter as agreed or abiding by the bargained-for terms.

### B.     Procedural and inherent powers.

As to the Court's procedural and inherent powers to enter a default judgment, the Eleventh Circuit held:

> "We do not rule here that a court has no authority to enter a default judgment based on a party's failure to fulfill its obligations in the arbitration process. Certainly, the Federal Rules of Civil Procedure give courts authority to enter default judgments or dismissals as sanctions. See, e.g., Fed. R. Civ. P. 11(b)(1), (c) (providing for sanctions based on papers "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"); Fed. R. Civ. P. 37(b)(2)(A)(vi) (providing for the entry of a default judgment against a party who violates a discovery order); Fed. R. Civ. P. 41(b) (providing for dismissal when a plaintiff "fails to prosecute or to comply with these rules or a court order").
>
> And beyond the federal rules, "[c]ourts have the inherent power to police those appearing before them." Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017). This includes the power "to fashion an appropriate sanction for conduct which abuses the judicial process." Id. (quotation omitted). But in order for a court to impose a sanction pursuant to its inherent authority, it must make a finding that the sanctioned party acted with subjective bad faith. Id. at 1224. And such a bad faith finding must be made in compliance "with the mandates of due process," requiring fair notice and an opportunity to be heard. See Kornhauser v. Comm'r of Soc. Sec., 685 F.3d 1254, 1257 (11th Cir. 2012)."

Hernandez, 898 F3d at 1305-06.

In Hernandez, the employer Acosta, after participating in a JAMS administered arbitration for over a year, stopped paying the arbitration fees, arguing the cost of arbitration was excessive. JAMS dismissed the arbitration. Hernandez, who had filed an initial complaint in the federal court, moved to lift the stay and asked the district court to find Acosta in default of the arbitration. The district court entered the default, and the Eleventh Circuit upheld the arbitration default determination. However, the district went further and also entered a default judgment based solely on the arbitration default. The default judgment was reversed on appeal but the Eleventh Circuit held the district court did have both procedural and inherent power to enter a default judgment, but to enter a judgment under its inherent power, the district court must hold an evidentiary show cause hearing. The case was remanded for further proceedings, with the court stating:

> On remand, the District Court may well find that Acosta acted in bad faith in choosing not to pay its arbitration fees. After all, Acosta acknowledges it quit paying after the arbitrator failed to consolidate Mr. Hernandez's case with the other cases brought by other Acosta employees, and because it thought the arbitrator had allowed too much discovery. Acosta also noted that arbitration was set to cost more than Mr. Hernandez's claim was worth. A calculated choice to abandon arbitration after getting adverse rulings from the arbitrator certainly looks like forum shopping. And this type of behavior would surely be a factor the District Court could consider in deciding whether to sanction Acosta by entering a default judgment.

Hernandez, 898 F.3d at 1306.

Here, if the Court declines to enter a default judgment based on breach of the Arbitration Agreement, the Plaintiffs seek an order to show cause as to why the Defendants' should not be sanctioned for their intentional act of non-payment, which effectively sabotaged the parties' arbitration. Schumacher Auto Group is a million-dollar automobile sales corporation that has the resources at hand to pay for this consolidated arbitration. The non-payment did not occur due to lack of funds. It was a calculated move on behalf of the Defendants to stop the arbitration because of the negative rulings and because Defendants simply decided they didn't want to pay what they

had to pay.   The Defendants' no longer wanted to live up to their end of the bargain.

Arbitration is expensive.  Defendants knew that when they drafted an 11-page Arbitration Agreement and Rules which mirrors the Federal Rules of Civil Procedure including, summary judgment motions, depositions, requests for production, interrogatories, experts, supplemental discovery, motions to compel discovery, post-hearing briefs, etc. (**Exhibit A – Rules 11, 12 & 13**).  The Agreement basically contemplates a full-blown private federal proceeding.   For this process, the Defendants agreed to pay all arbitration costs.  However, once the arbitrators issued negative rulings and sanctions, the Defendants became unhappy with the bargained-for terms and refused to pay.

The Defendants then embarked on a pressure campaign to further circumvent their contractual obligations by suggesting to the Plaintiffs that the matter be bifurcated into liability only, or waiver of arbitration altogether with submission to the federal courts or agreement to a new arbitrator or Panel of arbitrators (akin to forum shopping).  None of these options appear in the Agreement.  Further, these options contravene the JAMS Stipulation for Arbitration signed by the Defendants wherein they agreed to resolving this dispute only at JAMS, and giving up any right to have this matter litigated in a court or jury trial.

In all fairness, this Court should find a breach of the Agreements or entertain the motion for an order to show cause because the Defendants have intentionally and materially breached their Agreements.  As a policy measure, this Court should enter a judgment of default for liability as a way to "deter recalcitrant parties from looking to benefit by breaking their promise to pay for the costs of arbitration." Stiffing the Arbitrators, pg. 5.

WHEREFORE, the Defendants move this Court for entry of an order of arbitration default ruling the Defendants have waived the right to arbitrate. In addition, Plaintiffs seek an order finding the Defendants materially breached the Arbitration Agreements by failing to pay the agreed-upon arbitration costs, resulting in entry of a default judgment on liability, leaving open only a determination of the Plaintiffs' damages, or in the alternative, entry of an order to show cause as to why a default judgment should not be entered based on Defendants' failure to pay the agreed-upon arbitration costs.

Dated: July 13, 2021

Respectfully submitted,

*/s/ Catherine A. Cullen*
Catherine A. Cullen, Esq. (Fla. Bar No. 1017783)
Mark A. Cullen, Esq. (Fla. Bar No. 325082)
Attorney E-mail: mailbox@cullenlawfirm.net
THE CULLEN LAW FIRM, P.A.
500 S. Australian Avenue, Suite 538
West Palm Beach, FL 33401
Telephone: 561.640.9191

*Attorneys for Plaintiffs*

I HEREBY CERTIFY that I electronically filed the foregoing with the CM/ECF filing system on this **13th day of July, 2021,** and I will serve a copy of this Motion on Plaintiffs or counsel for the Plaintiffs along with the Complaint in this matter.

*/s/ Catherine A. Cullen*
Catherine A. Cullen, Esq. (Fla. Bar No. 1017783)